Dianne VALLONE and Dennis Vallone, Appellees,

v.

Richard H. CREECH, M.D., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 11, 2002.
Filed March 24, 2003.

Michael O. Pitt, Plymouth Meeting, for appellant.

William P. Murphy, Philadelphia, for appellees.

BEFORE: MCEWEN, P.J.E., BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Richard H. Creech, M.D., appeals the June 11, 2002 Order awarding a new trial to the appellees, Dennis and Dianne Vallone, husband and wife, who initiated this medical malpractice action alleging appellant's negligent treatment of appellee/wife's breast cancer.[1] A jury found in favor of appellant, but the trial court granted appellees' post-trial motion for a new trial concluding the verdict was against the weight of the evidence and, "[t]here [was] no rational explanation for the jury verdict in this case." Trial Court Opinion, Goodheart, S.J., 7/16/02, at 8. The trial court also concluded a new trial was warranted based on erroneous jury instructions. This appeal followed.[2]

¶ 2 The factual background preceding this appeal, as set forth by the trial court, follows.

[Appellee] first came under the care of [appellant] in March, 1991, after a biopsy indicated the presence of an infiltrative lobular carcinoma in her right breast. Shortly thereafter, she underwent a "lumpectomy" and remained in [appellant's] care until December, 1993, when (for reasons related to her insurance coverage) she began to treat elsewhere.

In August, 1996, [appellee] noticed significant changes in her breast, and arranged to see [appellant] in October, which was the first date he had available. At that appointment, she told [appellant] about the changes in her breast, said that it had begun to hurt, and that she was extremely concerned about a recurrence of cancer.

[Appellant] ordered a bone scan, some blood work and a mammogram. One week later, [appellee] returned to [appellant] and again expressed her concerns about the changes in her breast. [Appellant] told her that the changes were the result of the radiation therapy she had undergone after the 1991 lumpectomy, and that she should visit him again in three months.

This pattern continued until December 2, 1997, when [appellee] presented with a red rash on her right breast. *Up to this point, [appellant] had not ordered a biopsy.*

During the December 2, 1997 visit, [appellant] diagnosed [appellee] with a recurrence of cancer, a diagnosis that was confirmed by a biopsy the following week. Both of [appellee's] breasts were subsequently removed, and she underwent extensive chemotherapy treatment afterwards[.]

*Id.* at 1–2 (emphasis in original). In September, 1999, appellees brought suit alleging medical malpractice. A jury trial was conducted February 4–7, 2002, and a verdict was entered in favor of defendant/appellant. As stated above, however, on June 11, 2002, the court granted plaintiff/appellees' motion for a new trial.[3]

---

1. References to "appellee" throughout this Opinion are to appellee/wife.

2. The interlocutory Order granting a new trial is appealable as of right. Pa.R.A.P. 311(a)(6).

3. We note that while trial was conducted before the Honorable Legrome Davis, that jurist was subsequently appointed to the United States District court causing the matter to be re-assigned, for post-trial proceedings, to Bernard J. Goodheart, S.J.

¶3 Appellant argues the trial court erred by overturning the jury's verdict rendered in his favor and by granting appellees a new trial. Appellant contends the jury heard expert testimony from both sides concerning the standard of care expected by a patient and concluded he was not negligent in his treatment of appellee. "Defense expert, Dr. Algazy, also testified that [appellant] complied with the standard of care and that there was no need for [appellant] to perform a biopsy in the Fall of 1996 nor was there anything for him to biopsy at that point." Appellant's brief at 9. By granting a new trial, appellant argues, the trial court wrongly substituted its opinion for that of the jury.

[W]e note our standard of review concerning a trial court's ruling on a motion for a new trial is as follows. This Court will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law. The decision to grant a new trial based on a challenge to the weight of the evidence is within the sound discretion of the trial court. It is well established that where a jury's verdict is so contrary to the evidence as to shock one's sense of justice the award of a new trial is imperative, so that right may be given another opportunity to prevail.

*Yacoub v. Lehigh Valley Medical Associates, P.C.,* 805 A.2d 579, 586 (Pa.Super.2002) (citations and quotations omitted); *see also Duncan v. Mercy Catholic Medical Center of Southeastern Pennsylvania,* 813 A.2d 6 (Pa.Super.2002).

¶4 As expected, the expert testimony presented by each side differed. Plaintiffs' expert, Donna Jean Glover, M.D., a medical oncologist, began treating appellee in January, 1998, 15 months following appellant's alleged negligent treatment of appellee. Dr. Glover opined, given appellee's medical history and the changes in her breast as presented in October, 1996, it was, "below the standard of care, it's medical negligence and a deviation not to perform that biopsy to excise the entire area of new change to rule out the presence of cancer in the underlying tissue." N.T., 2/5/02, at 78–79. Dr. Glover testified that appellant's failure to order a simple biopsy, causing a 14–15 month delay in diagnosing appellee's cancer recurrence, caused her chance of survival to plummet from 90% to zero. *Id.* at 121–122.

¶5 Robert John Cole, M.D., a radiation oncologist, also testified on behalf of plaintiffs and agreed with Dr. Glover's testimony. Dr. Cole also opined that if a cancer patient presents five years after completion of radiation, with a dramatic change in her breast appearance, a physician must assume the change is the result of recurring cancer until a biopsy proves otherwise. *Id.* at 203–204. To not perform that biopsy, Dr. Cole testified, would be substandard medical care. *Id.* at 204.

¶6 While it is expected the plaintiffs' expert witnesses would testify as such, what especially shocked the conscience of the trial court, and this Court as well, was the testimony offered by appellant himself, wherein he admitted that upon his October, 1996 examination of appellee, he believed there was a *20% chance* the cancer had recurred, yet he did nothing to confirm that suspicion until approximately 14 months later. Appellant also testified that in October of 1996, when appellee presented with changes in the shape of her breast, he thought, "[w]hat in the world is going on here? *It could be a recurrence of her cancer,* it could be due to the radiation therapy." N.T., 2/6/02, at 117 (emphasis added). Because appellee purportedly told appellant the visible changes in her breast were not acute, appellant testified he be-

lieved the changes were, "80 percent into the ballpark of radiation change, *20 percent into recurrent cancer.*" *Id.* at 118 (emphasis added).

¶ 7 Given appellant's negligent failure to aggressively treat his patient for what he admitted was a 20% possibility of recurrent cancer, we agree the jury verdict in favor of appellant so shocks the court's conscience so as to require the award of a new trial. As the trial court concluded, "it is clear beyond reasonable dispute that failure of [appellant] to order a biopsy of [appellee's] right breast for approximately fifteen months after first noting changes in it that he *admitted* 'could have been' cancerous substantially increased [appellee's] risk of harm, and decreased her chances of surviving five more years (the standard definition of cancer cure) from perhaps 90% to zero." Trial Court Opinion at 6 (emphasis in original).

¶ 8 Appellant next argues the trial court erred by concluding the "error in judgment" jury instruction was inappropriate, causing the jury to be "hopelessly confused during its deliberations." *Id.* at 8. While the trial court acknowledged a physician may not be held liable for a mere error in judgment, the court also reasoned, "such an instruction to the jury is only appropriate in a case where there is at least some question whether the physician's performance breached the standard of care in the first place." *Id.* at 7. For ease in understanding the parties' respective positions, we repeat the information provided in footnote number three, that the judge who authored the Opinion granting a new trial is not the judge who presided at the jury trial.

¶ 9 A trial court has broad discretion in phrasing jury instructions, and may choose its own wording as long as the law is clearly, adequately and accurately presented to the jury for its consideration.

*Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d 131 (2001), *cert. denied, Rivera v. Pennsylvania,* 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d 355 (2002).

When reviewing a challenge to a jury charge, we must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said.

*Gunn v. Grossman,* 748 A.2d 1235, 1243 (Pa.Super.2000).

¶ 10 In arguing the jury charge was inappropriate and presents yet another reason to grant a new trial, appellee relies, *inter alia,* on *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963), a case in which elderly plaintiff argued his physician did not use the "requisite judgment and care" in arriving at a diagnosis because he did not obtain an x-ray as an aid following plaintiff's fall. *Id.* at 104, 194 A.2d at 173. Such failure to act, Smith argued, constituted a prima facie case of negligence. *Id.* The *Smith* Court concluded that the doctor's failure to order those tests necessary to secure an adequate factual basis upon which to render a correct diagnosis was not mere error in judgment, but negligence. Similarly in *Gunn, supra,* this Court rejected the doctor's suggestion that a physician cannot be liable for a mistake in judgment unless the mistake was negligent or reckless, and concluded the trial court's general instructions regarding medical malpractice were sufficient. Appellee herein argues the issue before the jury was solely one of negligence; accord-

ingly, a jury instruction on "mere error in judgment" was not warranted. Appellee's brief at 33.

¶ 11 In this case, the Honorable Bernard J. Goodheart, who rendered the decision on post-trial motions, concluded: "The uncontroverted testimony in this case established that Dr. Creech's failure to order a biopsy for approximately fifteen months after Mrs. Vallone presented with changes in her breast, given Dr. Creech's knowl-. edge that a cancerous growth had previously been removed from it, so clearly violated the requisite standard of care that the 'mere error of judgment' charge had no place in this trial." Trial Court Opinion at 8. We concur with this assessment.

 ¶ 12 The trial court instructed the jury that the failure to order appropriate diagnostic testing would be negligence, but a "mere error in judgment" in failing to order the appropriate test would not:

You should also understand that no inference of negligence arises merely because an unfortunate medical condition or complication follows medical care that we discussed earlier. The critical issues are whether the doctor failed to satisfy the professional standard of care and whether that failure was the legal cause of injury to the plaintiff.

A physician who exercises normal skill, care and diligence is not liable for mere errors of judgment. If the physician has exercised the appropriate level of skill or care or diligence that other members of their profession or their specialty would exercise, and has acted reasonably, then he would not be liable in negligence should you find his judgment to be inherent [sic] by hindsight. However, you should understand that there is a vast difference between an error of judgment and negligence in collecting and securing factual data necessary in order to arrive at a proper con-

clusion. If a physician as an aid to his diagnosis or judgment does not avail himself of the scientific means and facilities open to him for the collection of the best factual data upon which to arrive at his diagnosis, he may, depending upon all the facts of the case, be found negligent for failing to secure the appropriate tests upon which to base a diagnosis or judgment. The critical question is whether a reasonably careful or prudent physician in his position would have obtained a particular test in issue.

N.T., 2/7/02, 29–30.

¶ 13 The jury sent out a number of notes during its deliberations, clearly confused by the instructions. After one question, the trial court repeated the above passage regarding, "mere error of judgment." N.T., 2/8/02, at 7–8. Later that day, the jury returned a defense verdict.

¶ 14 Under the instructions given, the jury was required to conclude it was at least permitted to choose error in judgment or negligence in failing to order appropriate diagnostic testing. In this circumstance, where the trial court's initial charge on "mere error in judgment" had confused the jury, repeating the same instruction in complete isolation from the rest of the charge provided more confusion than clarity.

 ¶ 15 It is hornbook law in this Commonwealth that a trial court should not charge the jury on a concept that is not supported by the evidence. *Oxford Presbyterian Church v. Weil–McLain Co.*, 815 A.2d 1094 (Pa.Super.2003). Where a court orders a new trial for a specific reason, we examine that reason and determine whether the court abused its discretion in ordering the new trial. *Kovach v. Solomon*, 732 A.2d 1 (Pa.Super.1999). "Error in a jury charge may provide the basis for a new trial if it is shown that the

instruction may have been responsible for the verdict. A charge to the jury which is not warranted by the evidence is ground for a new trial." *Id.* at 6 (citations omitted). We conclude the "mere error in judgment" charge had no application in this case because it was not supported by the evidence. Given appellant's acknowledgment that he thought recurrence was a twenty percent possibility, his failure to order diagnostic testing was not a mere error in judgment. We conclude, therefore, that the post-trial motion court did not abuse its discretion when it concluded the confusing jury instructions also warranted the grant of a new trial.

¶ 16 On these bases, we affirm the Order granting a new trial.

¶ 17 Order affirmed.