**Therese BLICHA, Administratrix of the Estate of Anthony Blicha, Appellant,**

v.

**Fred D. JACKS, Jr., M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2004.

Filed Nov. 30, 2004.

Reargument Denied Feb. 3, 2005.

Larry I. Haft, Newtown, for appellant.

Jeffrey W. McDonnell, Philadelphia, for appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant, the Estate of Anthony Blicha, appeals the judgment entered on May 5, 2004, by the Court of Common Pleas of Montgomery County, which denied Appellant's motion for post-trial relief in the form of a new trial. We affirm.

¶ 2 On Thursday, May 7, 1998, Anthony Blicha went to see his primary care physician, Fred Jacks Jr., for a routine visit. N.T. 1/7/04 at 86. Mr. Blicha had a history of anemia, hypertension, possible Huntington's disease, and mental health problems. N.T. 1/7/04 at 47–50, 81–83. Mr. Blicha also had a history of being non-compliant with medical treatment and minimizing his medical problems. N.T. 1/7/04 at 83–86. Based upon Mr. Blicha's history of anemia, Dr. Jacks ordered a complete blood count. N.T. 1/7/04 at 86–87. On Monday, May 11, 1998, Dr. Jacks reviewed the results of the blood test and discovered that Mr. Blicha's hemoglobin count was in the critical range. N.T. 1/7/04 at 88–91.

The sole means of contacting Mr. Blicha was through his employer. N.T. 1/7/04 at 89–90. Dr. Jacks contacted the employer and asked him to locate Mr. Blicha. N.T. 1/7/04 at 90. Later that afternoon, Dr. Jacks was informed by the police that Mr. Blicha had been found dead in his home and that there were no signs of foul play. N.T. 1/7/04 at 91. No autopsy was performed on Mr. Blicha. N.T. 1/7/04 at 91–95. Dr. Jacks signed a death certificate stating that Mr. Blicha had died of natural causes and that he suffered from hypertension and anemia. N.T. 1/7/04 at 91–95.

¶ 3 In October 2002, the Estate of Anthony Blicha commenced the underlying action for negligence against Dr. Jacks. A jury trial began on January 6, 2004. On January 7, 2004, the jury reached a verdict in favor of Dr. Jacks. On January 15, 2004, Appellant filed a motion for a new trial, which was denied by the trial court in May 2004. The instant appeal follows. The trial court directed Appellant to file a statement pursuant to Pa.R.A.P. 1925(b), Appellant filed the statement, and the trial court filed an opinion.

¶ 4 On appeal Appellant claims that it is entitled to a new trial because: (1) the trial court allowed Appellee's expert to testify to opinions based upon facts contrary to the record; (2) the trial court wrongly charged the jury that Appellee could not be held liable for an error of judgment, when the only relevant judgment made by Appellee was wrong; and (3) the verdict was against the weight of the evidence. Appellant challenges the denial of its motion for a new trial.

¶ 5 Trial courts have broad discretion to grant or deny a new trial. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121 (2000). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether

the trial court abused its discretion." *Id.* at 465, 756 A.2d at 1121. Absent a clear abuse of discretion by the trial court, an appellate court must not interfere with the trial court's authority to grant or deny a new trial. *Id.* at 466, 756 A.2d at 1122. When determining whether the trial court abused its discretion, the appellate court must confine itself to the specific reasons given by the trial court for its ruling. *Id.* An appellate court may reverse the trial court's decision only if it finds no basis on the record to support the reasons offered by the trial court. *Id.* at 468, 756 A.2d at 1123. If support for the decision of the trial court is found in the record, the order must be affirmed. *Commonwealth ex rel. Meyers v. Stern,* 509 Pa. 260, 501 A.2d 1380, 1382 (1985). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman,* 562 Pa. at 468, 756 A.2d at 1123. An abuse of discretion will not be found where an appellate court simply concludes that it would have reached a different result than the trial court. *Id.* If the record adequately supports the trial court's reasons and factual basis, an appellate court may not conclude the court abused its discretion. *Id.* Here, after a thorough review of the record, we find that the trial court did not abuse its discretion in denying the request for a new trial.

¶ 6 Appellant's first claim is that the trial court erred by allowing defense expert, Dr. Bruce Silver, to testify that Dr. Jacks' conduct met the standard of care based upon his actions occurring on Monday, May 11, 1998. At trial, one of the hotly contested issues was whether Dr. Jacks received the blood test results from

Quest Diagnostic Laboratories on May 8, 1998 or May 11, 1998. Appellant argues that the trial court should have ruled as a matter of law that Dr. Jacks received the laboratory report from Quest Diagnostics on May 8, 1998, and should therefore have excluded Dr. Silver's testimony regarding the standard of care because the testimony was based on the assumption that Dr. Jacks received the report on May 11, 1998.

¶ 7 Dr. Jacks testified that he expected to receive the results from Quest on May 8, 1998, but he did not learn of the test results until May 11, 1998.[1] N.T. 1/7/04 at 13, 88. Dr. Jacks stated that, first thing in the morning, his office staff would remove the test results from the printer and place them on his desk. N.T. 1/7/03 at 11. Mr. Blicha's test results did not appear on his desk until May 11, 1998. N.T. 1/7/03 at 11. He further testified that, since Mr. Blicha's hemoglobin reading 5.2 constituted a critical, but not life-threatening, value, he would have expected Quest to call him about the results but that they did not do so.[2] None of Dr. Jacks' office staff testified at the trial.

¶ 8 Robert Gilmour, a quality analyst at Quest, testified at the trial, in part, regarding the accuracy of the Quest time-stamping method. N.T. 1/6/04 at 87–127. On cross-examination, Mr. Gilmour admitted that: (1) he was not personally involved with the sending of the report to Dr. Jacks; (2) he did not know whether the clock that was keeping the time for the printer in question was accurate; (3) it was not within the scope of his employment to be alerted if a doctor's office did not receive a particular lab report on time; (4) he had no personal knowledge of Dr. Jacks' arrangements for receiving reports from Quest; and (5) it was Quest's policy to telephone doctors when laboratory tests

---

1. A printer recorded a time of receipt of the results as 5:49 a.m. on May 8, 1998. N.T. 1/6/04 at 114.

2. Quest was not a party to the action.

showed critical values but Mr. Blicha's hemoglobin of 5.2 did not constitute a critical value. N.T. 1/6/04 at 114–123.

¶ 9 Dr. Silver, who testified via a videotaped deposition, stated that he would have expected Quest to call Dr. Jacks with the test results since a hemoglobin reading of 5.2 constituted a critical value. N.T. 1/5/04 at 82. Dr. Silver testified regarding his own experience with incorrectly time-stamped receipts, including problems with Quest, and noted certain discrepancies on the time-stamp of the report sent to Dr. Jacks. N.T. 1/5/04 at 65, 82. Dr. Silver, accordingly, accepted Dr. Jacks' representation that he did not have the report until May 11, 1998, and based his testimony regarding the appropriate standard of care upon Dr. Jacks receiving the report on that date.

■■■ ¶ 10 "The admission of expert testimony is a matter of discretion of the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion." *Estate of Pew*, 409 Pa.Super. 417, 598 A.2d 65, 69 (1991) (citation omitted). For the reasons discussed below, we find that the trial court did not abuse its discretion in admitting Dr. Silver's testimony.

¶ 11 Here, Appellant's argument is, in essence, that the trial court should have found, as a matter of law, that Dr. Jacks received the blood test results on May 8, 1998, and should therefore have excluded Dr. Silver's testimony which was based upon the assumption that the report was not received until May 11, 1998. However, Appellant has offered nothing to support this claim.

¶ 12 Appellant relies on this Court's decision in *Viener v. Jacobs*, 834 A.2d 546 (Pa.Super.2003). However, this reliance is misplaced. *Viener* was a shareholder suit within a closely held corporation and involved a claim for breach of fiduciary duty. *Id.* In *Viener*, an expert based certain calculations on the assumption that there were three investors in a corporate entity when, in fact, there were four—a clear factual error. *Id.* Here, as discussed above, the testimony regarding the date of receipt of the report was sharply disputed. Appellant has offered no support for the notion that a computer-generated date-stamp, and general testimony about the reliability of the Quest computer system, constituted sufficient evidence to support a conclusion as a matter of law in the face of testimony to the contrary. Further, Appellant repeatedly argues that the burden rested on Appellee to prove that the document was not received on May 8, 1998. However, again, Appellant has provided nothing to support this shifting of the burden to Appellee. Lastly, Appellant argues that Dr. Jacks never testified that he did not receive the report on May 8, 1998. However, we find Appellant's attempts to recharacterize Dr. Jacks' testimony with respect to the receipt of the lab report to be nothing more than linguistic sophistry. Dr. Jacks testified that he was not the person who pulled the lab reports from the printer but that the pattern and practice in his office was to have the staff, who came in earlier in the day, pull the reports from his printer and put them on his desk. N.T. 1/7/04 at 12. He would then read them at some point during that day. N.T. 1/7/04 at 12. He further testified that, if the report had come in on May 8, 1998, he would have seen it on that day and the first time he saw the report was on May 11, 1998.[3] N.T. 1/7/04 at 13–14; 88.

3. We note that there was no testimony from any individual who actually examined the printer at Dr. Jacks' office and no testimony from any individual at Quest who had actual, direct knowledge of the report in question.

Further, there was no testimony from anyone at Dr. Jacks' office regarding the receipt of the report. Lastly, Dr. Jacks' testimony with

While Dr. Jacks never specifically used the word "received," the clear import of his testimony was that he did not receive the report until May 11, 1998.

¶ 13 The trial court found that the question of when the report was received was a question of fact to be decided by the jury. Trial Court Opinion 6/10/04 at 5. We agree. Given this, we find no abuse of discretion in allowing Appellee's expert to testify with regard to the standard of care based upon a date of receipt for the report of May 11, 1998.

¶ 14 Appellant's second claim is that the trial court erred when it charged the jury that Appellee could not be held liable for an error of judgment. The relevant portion of the charge stated:

> Furthermore, a physician is not liable for a mere error of judgment. The medical judgment itself of a doctor must be based on the same degree of skill, knowledge and care as that normally exercised in the medical profession. If the physician does employ the required skill, knowledge and care customarily exercised in his profession to make a judgment, then this will not render him or her liable.

N.T. 1/7/04 at 75–76.

When examining jury instructions, we must determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in the charge will be found to be a sufficient bases for the award of a new trial. We explained that [a] charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the grounds of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In a reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 345, 825 A.2d 591, 612 (2002) (citations omitted).

¶ 15 We find Appellant's claim with respect to this charge to be puzzling, at best. Appellant appears to argue that, despite their own expert's testimony to the contrary, N.T. 9/23/03 at 22–24, Appellee did not exercise any medical judgments in this matter. We disagree. Appellee exercised a medical judgment to conduct a lab test on Appellant rather than hospitalize him.[4] He then exercised a medical judgment on May 11, 1998,[5] by telephoning Mr. Blicha's employer and asking him to have Mr. Blicha contact him. Further, Appellant consistently questioned Dr. Jacks' exercise of that judgment, arguing that he should

respect to his practice with regard to test results was uncontradicted.

4. On appeal, Appellant argues that the trial court's statement, in its 1925(a) opinion, Trial Court Opinion 6/10/04 at 7–8, that Appellee exercised a medical judgment in not hospitalizing Mr. Blicha on May 7, 1998 was erroneous and unsupported by the record. We disagree. Appellant's own expert, Dr. Sklaroff, testified that Dr. Jacks should have diagnosed

internal bleeding based upon the physical symptoms exhibited by Mr. Blicha on May 7, 1998 and should have hospitalized him immediately. N.T. 9/23/03 at 22–24.

5. We note that much of Appellant's argument with respect to this claim is again premised on its belief that Dr. Jacks received the blood test results on May 8, 1998, and neglected to take any action until May 11, 1998.

have diagnosed the internal bleeding on May 7, 1998; should have taken additional action on May 8, 1998; and that, based on the allegedly emergency nature of his condition, should have acted more aggressively to locate Mr. Blicha on May 11, 1998. Further, we find Appellant's reliance on *Vallone v. Creech*, 820 A.2d 760 (Pa.Super.2003), to be misplaced. In *Vallone*, a doctor failed to order a biopsy despite his belief that there was a 20% chance that his patient's breast cancer had recurred. *Id.* at 763. Here, Appellant ordered diagnostic testing and made a medical judgment to attempt to contact his patient when he received the results. We have carefully reviewed the charge as given, N.T. 1/7/05 at 57–91, and find that it was clear, accurate, and more than adequate. Appellant's claim that the trial court erred in failing to grant a new trial because it charged the jury with respect to error of judgment is meritless.

¶ 16 Appellant's final argument is that it is entitled to a new trial because the verdict is against the weight of the evidence. We will only reverse based on a weight of the evidence claim when the verdict is so contrary to the evidence as to shock's one's sense of justice. *Cangemi v. Cone*, 774 A.2d 1262, 1265 (Pa.Super.2001). A new trial will not be granted on the ground that the verdict was against the weight of the evidence simply because the evidence was conflicting and the fact-finder could have decided in favor of either party. *S.N.T. Industries, Inc. v. Geanopulos*, 363 Pa.Super. 97, 525 A.2d 736, 740 (1987).

¶ 17 Here, Appellant presented evidence that Mr. Blicha's death was caused by internal bleeding and that Dr. Jacks failed to appropriately treat that bleeding. Appellee presented evidence that Mr. Blicha's death was not caused by internal bleeding and that Dr. Jacks met the standard of care with respect to his

treatment of Mr. Blicha. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380–381 (Pa.Super.2002). The jury chose to believe Appellee's version of the events of May 7–11, 1998, we have no basis to substitute our judgment for their's. Accordingly, we find that the trial court properly held that Appellant was not entitled to a new trial on the ground that the verdict was against the weight of the evidence.

¶ 18 Affirmed.

¶ 19 **KELLY, J., FILES A CONCURRING STATEMENT.**

CONCURRING STATEMENT BY KELLY, J.:

¶ 1 I join the majority but write separately because I believe the trial court should not have instructed the jury "a physician is not liable for a mere error of judgment." The majority recognizes this case involves two medical judgments by Dr. Jacks, his May 7th diagnosis of Mr. Blicha and his May 11th attempt to contact Mr. Blicha after receiving the test results. The question for the jury was whether Dr. Jacks made these medical judgments with the degree of care normally exercised in the medical profession. This case did not involve errors of judgment apart from the aforementioned medical judgments. Thus, the court did not need to distinguish between a medical judgment and a "normal" error in judgment, and doing so may have injected unnecessary confusion into a relatively straight-forward issue. Despite my concern about this small portion of the charge, however, I agree with the majority that the charge as a whole adequately and clearly instructed the jury on the issues of

the case. Accordingly, I concur in the result.