J-A06025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LILLIAN MARIE CIECHOSKI, A MINOR BY HER PARENT AND NATURAL GUARDIAN, LESLIE PROFFIT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| AMY JANE CA'DIEUX, M.D., WOMEN'S HEALTH CARE, GROUP OF PENNSYLVANIA, LLC D/B/A WOMEN'S HEALTH CARE GROUP OF PA, PHOENIXVILLE HOSPITAL COMPANY, LLC D/B/A PHOENIXVILLE HOSPITAL, PHOENIXVILLE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM | |
| APPEAL OF: PHOENIXVILLE HOSPITAL COMPANY, LLC D/B/A PHOENIXVILLE HOSPITAL | |
| | No. 1931 EDA 2014 |

Appeal from the Judgment Entered July 11, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2012-05117

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.: **FILED JULY 08, 2015**

Phoenixville Hospital appeals from the judgment entered July 11, 2014, in the Court of Common Pleas of Chester County. A jury determined Phoenixville Hospital was responsible, through the action of two of its

nurses, for injuries suffered by Lillian Ciechoski at birth. The jury awarded Ciechoski, who suffered hypoxic ischemic encephalopathy,[1] in excess of $32,000,000.00. In this timely appeal, Phoenixville Hospital raises four claims of error. It alleges the trial court erred in (1) denying the three separate motions regarding corporate negligence; (2) denying the grant of a new trial based on instructions to the jury addressing the dismissal of claims against Dr. Cadieux;[2] (3) denying the motion *in limine* seeking to prevent Nurse Cydney Menihan from testifying for lack of qualifications under the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.512; and (4) denying the motion for JNOV for failing to establish a causal nexus between the alleged negligence of Nurses Winter and Jones-Sandy and the injuries suffered by Lillian Ciechoski. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

_____

[1] Hypoxic ischemic encephalopathy is the technical name for a brain injury caused by oxygen deprivation. In this case, the injury is manifested as spastic quadriplegia, the most severe form of spastic cerebral palsy.

[2] Although the caption spells Dr. Cadieux's name with an apostrophe between the "a" and the "d", the majority of the record spells her name without the apostrophe. Dr. Cadieux did not use an apostrophe when spelling her name for the record when she testified on January 9, 2014. Therefore, we will not use the apostrophe.

We recite the relevant factual history as related by the trial court in its

Pa.R.A.P. 1925(a) opinion.

> On the evening of November 14, 2009, upon the advice of Group, her OB/GYN provider, Leslie Proffitt ("Mother") arrived at Phoenixville Hospital. The Group's on-call physician that evening, defendant Cadieux, was already at the hospital.

> Mother was admitted to the hospital and was taken to the labor and delivery unit where she was hooked up to a fetal heart monitor. Around 1:07 A.M. on November 15, 2009, the fetal heart monitor indicated the baby's heart rate dropped to a below-normal rate.[3] Nurse Christine Winter was the first to arrive in Mother's room after the drop in heart rate and attempted to adjust Mother's position in order to get the baby's heart rate to return to a normal rate. Nurse Lana Jones-Sandy arrived in the room at some point after that. Meanwhile, Nurse Heverly and defendant Cadieux were attending to another patient in a nearby room. Around 1:17 or 1:20 A.M., nurse Winter informed defendant Cadieux of the baby's decelerated heart rate and defendant Cadieux came into the room. After struggling with malfunctioning equipment, around 1:25 A.M. defendant Cadieux began taking steps to prepare for a possible caesarean section. At approximately 1:33 A.M. defendant Cadieux called a code OB to signal that Mother needed an emergency caesarean section. At 1:49 A.M. on Sunday November 15, 2009, [Lillian Ciechoski] was born via caesarean section.

> [Ciechoski] was not breathing when she was born. She was gray in color and experienced seizures. She was immediately taken to an intensive care unit and then was taken to the Children's Hospital of Pennsylvania for treatment.

---

[3] Evidence indicated that within 40 seconds, the baby's heart rate dropped from the baseline 125 beats per minute to 60 beats per minute. **See** N.T. Trial, 1/13/2014, at 125-26.

When she was about one year old, [Ciechoski] was diagnosed with spastic quadriplegic cerebral palsy. Since her diagnosis, she has been receiving many types of treatment including rehabilitation therapy, physical therapy, occupational therapy, and speech therapy. She attends a school for children with special needs. She cannot stand, walk or perform basic functions such as turning the page of a book without supervision or equipment or both. She cannot speak and is learning how to communicate through a program on an ipad. She continues to have seizures, though infrequently.

Trial Court Opinion, 10/23/2014, at 2-4 (citations to record omitted).

In addition to the above, Plaintiff's expert, Dr. Marcus Hermansen, M.D., testified Ciechoski's injuries were caused by birth asphyxia and that in such situations, every minute of delay causes additional brain damage. Nursing expert, Cydney Menihan, CNM, MSN, RDMS, testified actions of Phoenixville Hospital Nurses Winter and Jones-Sandy caused 10 to 13 minutes of delay in the treatment of Ciechoski.

In its first claim, Phoenixville Hospital argues the trial court erred in denying three separate motions regarding Ciechoski's claims of corporate negligence against it. The trial court denied a motion *in limine* seeking to preclude expert, Dr. David Acker, M.D., from testifying on the issue of corporate negligence, and then denied a motion for nonsuit and motion for directed verdict on the issue of corporate negligence.

Here, however, as the trial court noted in its Pa.R.A.P. 1925(a) opinion, the jury found in favor of Phoenixville Hospital on the issue of

corporate negligence.[4]  Our review of the certified record confirms the trial court's finding.  Accordingly, even if we were to agree that the trial court erred in denying the various motions, Phoenixville Hospital suffered no prejudice.[5]  Therefore, having prevailed at trial on this issue, Phoenixville Hospital is not entitled to relief.

Next, Phoenixville Hospital claims the trial court erred in instructing the jury regarding Dr. Cadieux's dismissal from the action.  During trial, all parties agreed that there was no evidence of negligence against Dr. Cadieux and therefore the case against her should be dismissed.  After doing so, the trial judge informed the jury:

> Now, with respect to Dr. Cadieux and the Women's Health Care Group, as it turns out, we have now reached the stage of the trial where we know there is no dispute of fact with regard to Dr. Cadieux and, therefore, there is nothing to submit to you, the jury, with regard to Dr. Cadieux.  On the contrary, those matters, since there is no dispute of fact, it's up to me to resolve that matter.  And I do so, as a matter of law.
>
> So Dr. Cadieux will no longer be participating in this trial through counsel, as well as the Women's Health Care Group will not be participating in the trial any further.  And you have nothing to

_____

[4] The trial judge, the Honorable Robert J. Shenkin, expressed a certain surprise that Phoenixville Hospital raised this issue both post-trial and in this appeal.  We are also at a loss to explain why Phoenixville Hospital has appealed an issue on which it prevailed.

[5] Liability against Phoenixville Hospital was based on *respondeat superior*, not corporate negligence.

consider on that issue. There is no issue for you to consider. And you should not speculate why those two defendants are no longer involved in this case. You don't have to speculate. I told you that those issues are resolved as a matter of law.

And I would also point out to you that there is no claim in this case that the defendant, Phoenixville Hospital, is liable on the basis of any action taken or any failure to act by Dr. Cadieux.

N.T. Trial, 1/14/2014, at 64-65.

Phoenixville Hospital raised no objection to this instruction when it was given. Therefore, the issue has been waived. ***See Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1126 (Pa. 2000) (the general rule remains that a party waives an issue concerning perceived trial court error, if the party fails both to preserve the issue with a timely and specific objection at trial).

Phoenixville Hospital's third issue is a claim the trial court erred in allowing Plaintiff's nursing expert, Cydney Menihan, to testify where she was not qualified under the requirements of 40 P.S. § 1303.512.

Section 1303.512 is part of the Medical Care Availability and Reduction of Error Act (MCARE), 40 P.S. § 1303.101 et seq. Section 1303.512 addresses expert qualifications and states:

**(a) General rule.--**No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

**(b) Medical testimony.--**An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

40 P.S. § 1303.512(a), (b).

The trial court notes, and we agree, that there is no authority for the proposition that Section 1303.512 governs expert qualifications for testimony regarding claims of nursing negligence. Subsection (a) specifically limits the application of the rule to those persons offering "an expert medical opinion in a medical professional liability action *against a physician*", **id**. (emphasis added). Nurse Menihan offered no opinion regarding the care provided by a physician; she testified only to the standard of care regarding the nursing staff. If we were to apply section 1303.512 to nursing care, we would be ignoring the plain language of the statute. The rules of statutory interpretation forbid this. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Although MCARE changed the standards for expert qualifications in offering testimony against physicians, the general standards for expert qualifications still apply for nursing testimony.

> "The admission of expert testimony is a matter of discretion [for] the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion." **Blicha v. Jacks**, 864 A.2d 1214, 1218 (Pa. Super. 2004).
>
> It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. **Rauch v. Mike-Mayer**, 783 A.2d 815 (Pa. Super. 2001). When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. **Miller v. Brass Rail Tavern**, 541 Pa. 474, 664 A.2d 525 (1995). It is to ascertain whether the proposed witness has sufficient skill, knowledge, or experience in the field at issue as to make it appear that the opinion or inference offered will probably aid the trier of fact in the search for truth. **Bergman v. United Servs. Auto. Ass'n**, 742 A.2d 1101 (Pa. Super. 1999).

**Rettger v. UPMC**, 991 A.2d 915, 930 (Pa. Super. 2010).

Briefly, the record reflects at the time of trial Nurse Menihan was actively licensed in Rhode Island and Florida, and had inactive licenses in both California and Pennsylvania. She had been a nurse for 40 years and had worked in various aspects of labor and delivery throughout that time. She taught electronic fetal heart monitoring and was a nurse midwife. She taught at Brown University and was the sole awardee of a grant to study sudden infant death and electronic fetal monitoring patterns. Based upon our review of the record, we discern no abuse of discretion in the court's

allowing Nurse Menihan to provide expert testimony regarding nursing standard of care. Phoenixville Hospital is not entitled to relief on this issue.

In its final claim, Phoenixville Hospital argues the trial court erred in failing to grant judgment NOV on the grounds Ciechoski had not provided a causal nexus between the complained of actions by the nurses and the injuries suffered by Ciechoski.[6] Phoenixville Hospital maintains that because the actions of Nurses Winter and Jones-Sandy occurred in the beginning of the delivery process, and because Plaintiff's causation expert testified the brain damage occurred at the end of the delivery process, their actions cannot have caused the injury. Phoenixville Hospital fails to recognize that

---

[6] Our standard of review for this issue is as follows:

> When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*American Futures Systems, Inc. v. BBB*, 872 A.2d 1202, 1215 (Pa. Super. 2005) (citation omitted).

the delay, no matter when it occurred in the delivery process, subjected Ciechoski to the additional 10-13 minutes of oxygen deprivation that ultimately led to her injuries.

In denying Phoenixville Hospital relief on this issue, we rely on the able analysis of the Honorable Robert J. Shenkin, in his Pa.R.A.P. 1925(a) opinion, at pages 10-12, dated October 23, 2014, that states:

> It was undisputed at trial that the baby's heart rate decelerated at 1:07 A.M. and that defendant Cadieux did not become aware of this fact until about ten to thirteen minutes later, around 1:17 or 1:20 A.M. Defendant Cadieux testified, and moving defendant did not dispute, that a drop in a baby's heart rate may signal that the baby is in distress and not receiving enough oxygen to its vital organs. When a baby's heart is decelerated for ten minutes or more, a bradycardia occurs and the longer it continues the greater the risk to the baby and the more likely that an intervention may be necessary.
>
> Marcus Hermansen, M.D., plaintiff's expert, offered opinions in the field of neonatology. Dr. Hermansen testified that plaintiff's brain damage occurred because she "suffered lack of oxygen delivery to her brain during the final minutes before her birth." He testified that the baby "tolerated the first 15-20 minutes of bradycardia without brain damage," but that had she been born 15, 16 or 17 minutes earlier she "would have had very little, if any, brain damage."
>
> Plaintiff also offered the testimony of nurse Menihan, who testified that nurse Winter deviated from the standard of care applicable to nursing by failing to listen to the fetal heart rate and by failing to notify defendant Cadieux and the nursing supervisor "at the latest" by 1:09 A.M. that the fetal heart rate decelerated and was not responding to her nursing intervention strategies. Nurse Menihan also testified that nurse Jones-Sandy was an experienced labor and delivery nurse who had been assigned as a back-up nurse for the labor room. She testified that given her experience, nurse Jones-Sandy deviated from the

standard of care because she did not advise nurse Winter, who was less experienced, of the "catastrophic potential of the situation" and because she also failed to locate and inform defendant Cadieux. She also testified that after 1:09 A.M. the need to notify defendant Cadieux of the deceleration became more urgent because of the increased risk to the baby.

Defendant Hospital offered the testimony of Nurse Catherine E. Cochell, RNC, BSN, who offered expert opinions on the standard of care for labor and delivery nursing and fetal heart monitor interpretation. She testified that nurse Winter did not deviate from the standard of care by continuing to perform nursing interventions instead of calling for Dr. Cadieux or the nursing supervisor by 1:09 A.M. because she needed to see what the results of her interventions were before notifying them. She testified that the standard of care did not require nurse Jones-Sandy to advise nurse Winter of the severity of Mother's situation because nurse Winter demonstrated that she was aware of the severity of Mother's situation by initiating interventions and that discussing the severity of Mother's situation in front of Mother could have scared Mother. Further, she testified that the standard of care required that the nurses should not leave the patient and nurse Jones-Sandy did not deviate from the standard when she stayed with Nurse Winter to assist her with her interventions and turned a call light on signaling for the doctor to come, knowing that defendant Cadieux was on the unit at the time.

Defendant Hospital also offered the testimony of Dr. Daniel Small, M.D., who offered expert opinions in the field of obstetrics and labor and delivery nursing. He testified that nurse Winter did not deviate from the standard of care when she did not notify defendant Cadieux or the nursing supervisor by 1:09 A.M. of the heart rate deceleration. He also testified that nurse Jones-Sandy did not breach the standard of care by continuing to assist nurse Winter with nursing interventions instead of leaving to find the nursing supervisor or defendant Cadieux.

Based on this testimony, reasonable minds could disagree as to whether nurses Winter and Jones-Sandy were negligent in failing to notify defendant Cadieux of plaintiff baby's heart deceleration sooner than they did and whether their negligence caused

- 11 -

plaintiff's injuries. The jury concluded that nurses Winter and Jones-Sandy were negligent and that their negligence caused plaintiff's injuries. This conclusion is supported by the evidence. Since a basis exists upon which the jury could have properly made its award, we must affirm.

Trial Court Opinion, 10/23/2014, at 10-12 (citations to record omitted).

Because the trial court correctly determined the jury's verdict was supported by the evidence and accordingly denied the motion for JNOV, Phoenixville Hospital is not entitled to relief on this issue.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015