Michael D. KING, Administrator of the Estate of Judy D. King, Deceased,

v.

George STEFENELLI, Lawrence Rogina, Individually and d/b/a Potomac OB/GYN and J. Peter Hinterkopf.

Appeal of: Michael D. King.

Superior Court of Pennsylvania.

Argued May 19, 2004.

Filed Nov. 22, 2004.

J. Scott Kramer, Philadelphia, for appellant.

Michael M. Badowski, Camp Hill, for Potomac and Rogina, appellees.

Joanne Sellers, Lancaster, for Hinterkopf, appellee.

BEFORE: DEL SOLE, P.J., KELLY and CAVANAUGH,* JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This appeal follows a jury verdict in favor of defendants in a medical malpractice action. We affirm.

¶ 2 Appellant's wife, Judy King, died of multiple organ failure caused by excessive blood loss which occurred after she had undergone surgery to alleviate chronic pelvic pain. The laparoscopic surgery was performed by Appellees, Drs. Stefenelli and Rogina. After the conclusion of this procedure Mrs. King was sent to the recovery room, where in a short time she became hypotensive with a falling hemoglobin. Approximately one hour after the completion of the first surgery, Mrs. King was returned to the operating room where Drs. Stefenelli and Rogina performed a laparotomy, during which they discovered and then removed over 2000 cc's of blood from Mrs. King's abdomen. They obtained a consultation with Appellee, Dr. Hinterkopf, a general surgeon, who joined them in the operating room. Dr. Hinterkopf explored the organs and vessels of the abdomen for approximately 30 minutes, but was unable to find the source of the bleeding. An area over the mesentery was found to look traumatized, and although it was not actively bleeding, Dr. Hinterkopf sutured the area as a cautionary procedure. The doctors then continued to observe the patient for an additional 45 minutes, and seeing no additional bleeding during this time, and noting a stabilization of her blood pressure and vitals, they completed the surgery and Mrs. King was returned to the recovery room.

¶ 3 Later that same day Mrs. King again developed hypotension and Dr. Hinterkopf was again called in to operate with Drs. Stefenelli and Rogina. Once Mrs. King's abdomen was opened Dr. Hinterkopf observed active bleeding, with a slow weak pulse coming from a small vessel. Dr. Hinterkopf then went around the mesentery to clamp around the vessel to stop the blood flow. Mrs. King was observed for another 30 to 45 minutes, and when no signs of any additional bleeding were seen, she was closed and returned to the intensive care unit. The next morning Mrs. King became hemodynamically unstable and she was transferred by air ambulance to Hershey Medical Center. Despite further treatment, Mrs. King continued to experience excessive bleeding, which ultimately led to her death, two days after her initial surgery.

¶ 4 Appellant, Mrs. King's husband and administrator of her estate, brought an action against Drs. Stefenelli, Rogina and Hinterkopf.[1] The case was heard before a jury, and after a 9–day trial, they retired to deliberate at 1:06 p.m. At 8:39 p.m. that evening the jury indicated to the court that it was unable to reach a verdict. The court gave the jury further instructions and they elected to continue deliberations that evening. At 10:23, the court was notified that the jurors had reached a verdict. In response to specific interrogatories, the jury found that all three physicians were not negligent. Appellant later filed post-trial motions, which were denied by the trial court. This appeal followed.

¶ 5 On appeal Appellant lists nine issues. Many of these claims contain sub-issues

---

* Judge Cavanaugh did not participate in this decision.

1. Drs. Stefenelli and Rogina were both named individually and d/b/a Potomac OB/GYN.

either in their statement or in the argument portion of Appellant's brief.[2] In a general fashion these claims allege the court erred in denying Appellant's motion for judgment n.o.v., and for a new trial, and in its ruling on a number of evidentiary matters. He also asserts a number of challenges centered on the trial court's instructions and interaction with the jury. We will address each issue in turn.

¶ 6 Although Appellant's first issue is listed as a claim that the trial court erred in denying his motion for judgment n.o.v., his brief contains no corresponding argument on this point. Accordingly, it is waived. *Butler v. Illes*, 747 A.2d 943 (Pa.Super.2000); *Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944 (1981).

¶ 7 Appellant next argues that a new trial is warranted because the verdict was against the weight of the evidence. Despite its broad wording, Appellant's argument challenges only the jury's verdict in favor of Dr. Hinterkopf. Appellant claims that Dr. Hinterkopf's testimony and that of his own expert witness, Dr. Hoffman, establish that Dr. Hinterkopf breached the applicable standard of care because he failed to expose the suspected area of the mesentery and examine it for damaged vessels to find the area of bleeding during Mrs. King's second surgical procedure.

¶ 8 A new trial will not be granted on the basis of a weight of the evidence claim unless the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice. This Court will reverse the action of the trial court only if it determines that it acted capriciously or palpably abused its discretion. *Brindley v. Woodland Village Restaurant*, 438 Pa.Super. 385, 652 A.2d 865 (1995).

¶ 9 Dr. Hinterkopf testified about the manner in which he sought to detect the source of Mrs. King's blood loss. He told the jury that the blood was evacuated with a strong suction, and that no further bleeding was detected. He advised that he lifted each segment of the length of the bowel, manipulating and stretching both sides of the mesentery looking for a defect and attempted to dislodge any type of clot. N.T., 5/7/03, at 36–37. He explained that he did not do a formal exploration of the mesentery which would entail removing the entire upper layer and dissecting everything out because the vessels in that area are friable and easily fall apart. *Id.* at 40. Dr. Hinterkopf testified that he believed Mrs. King's natural clotting mechanisms acted to stop the bleeding when no further bleeding occurred after his exploration of the area and suctioning. *Id.* at 45–46. He also stated that he observed a bluish coloration like old blood around a tear in the peritoneum, *id.* at 35, and he stitched the area to prevent bowel from getting stuck on that open area of fat. *Id.* at 45.

¶ 10 Contrary to Appellant's suggestion, Dr. Hoffman did not opine that Dr. Hinterkopf was negligent for failing to "explore" and dissect out the individual mesentery blood vessels. Appellant argues that "Dr. Hoffman conceded that a failure to probe the area, to merely 'look' at the wound, would represent a breach of the standard of care." Appellant's Brief at 16.

---

**2.** We admonish Appellant that his brief fails to conform to the rules of appellate procedure. The statement of questions is presented in an argumentative fashion and is in excess of one page, contrary to Pa.R.A.P. 2116(a). Further, the argument portion of Appellant's brief contains many "sub-issues" which have not been presented in the statement of questions. These claims are deemed waived. *Id.*

Dr. Hoffman did testify that a surgeon would be responsible for doing more than just looking at the area. N.T., 5/5/03, at 145. He noted, however, that there are multiple ways to probe the area and it can be done with your fingers, with a suction device or with irrigation. *Id.* at 140.

¶ 11 Appellant argues that there is nothing in the record to dispute his contention that Dr. Hinterkopf "did nothing during that first laparotomy to affirmatively seek to stop the bleeding—or even locate the bleeding vessel that had caused the serious hemorrhage." Appellant's Brief at 18. However our review of the record finds support for the jury's verdict given Dr. Hinterkopf's testimony of his examination and probing of the mesentery to detect bleeding and the expert's agreed opinion that there were a number of ways to locate the source of the bleeding.

¶ 12 Further evidence was offered that Mrs. King had never before undergone surgery and that some individuals who have never had a history of bleeding problems can develop them where their hemostatic system is stressed during a surgery, or it may be discovered that they have an underlying vascular defect. N.T., 5/2/03, at 106–107. Additional evidence was offered and refuted regarding the possible effects to Mrs. King's blood clotting abilities from her use of aspirin or other pain reliever over a span of time and in differing amounts just prior to her surgery.

¶ 13 Given all the evidence presented, which was for the fact finder to weigh and accept or reject, we cannot find that the evidence was so unreliable or contradictory as to make any verdict based thereon pure conjecture. Accordingly, we find no merit to Appellant's weight of the evidence claim.[3]

■ ¶ 14 Appellant next challenges the court's charge to the jury. Appellant alleges the court improperly instructed the jury by giving a "mistake of judgment" charge and by combining this charge "with the law that a physician is not responsible merely on the basis of a bad outcome." Appellant's Brief at 28.

■ ¶ 15 It is well established that a trial judge is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on law inapplicable to the matter before it. *Schaefer v. Stewartstown Dev. Co.*, 436 Pa.Super. 354, 647 A.2d 945, 947 (1994). "Thus, 'instructions given to a jury must be confined to the issues raised in the pleadings and the facts developed by the evidence in support of such issues.'" *Id.* (citing *Heymann v. Electric Service Mfg. Co.*, 412 Pa. 338, 194 A.2d 429 (1963)).

■ ¶ 16 The law has long been that a physician is not liable for an error of judgment if that physician employs the required judgment and care. *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963). However, a physician is clearly liable if a mistake is made which reflects a failure to follow proper practice in violation of the standard of care required of physicians. *Havasy v. Resnick*, 415 Pa.Super. 480, 609 A.2d 1326,

---

**3.** As a separate subheading under the weight of the evidence issue, Appellant lists a claim that "the lower court erred in permitting defense experts to offer opinions based upon an erroneous assumption about defendant's treatment." Appellant's Brief at 21. This claim is not listed in Appellant's Statement of Questions, and is, therefore, waived. Pa. R.A.P. 2116(a). Despite the wording of this sub-issue and Appellant's acknowledgement that the trial court found such a claim waived because of Appellant's failure to object to certain testimony at trial, Appellant states that he is not arguing that certain testimony was inadmissible, but rather certain facts were overlooked by the jury. Our review finds the jury's verdict supported by the facts and not shocking to our sense of justice.

1336 (1992). In *Havasy*, the court ruled that the trial court did not err when it instructed the jury that if a physician exercises the skill, knowledge and care customarily exercised in his profession, he is not liable for a mere mistake of judgment. *Id.* It found the instruction was appropriate, and that the trial court's charge properly directed the jury to base its verdict on whether a physician had failed to follow proper medical procedure and not to infer a breach of the standard of care merely from the unfortunate result. *Id.*

¶ 17 In contrast, in *Vallone v. Creech*, 820 A.2d 760 (Pa.Super.2003), the court found it was error to instruct the jury on a "mistake of judgment." Therein the court found that such a charge had no application in the case as it was not supported by the evidence. Because the appellant-doctor had acknowledged that he believed a recurrence of his patient's cancer was a twenty percent possibility, the court found his failure to order diagnostic testing could not be a mere error in judgment.

¶ 18 In this case, Appellant claims that the charge was unsupported by the evidence, unnecessary and inaccurate. Specifically he contends that "[i]n the present case, there was no 'judgment' which would support a 'mistake of judgment instruction.'" Appellant's Brief at 35. He notes that judgment "is the conscious choice among equally acceptable alternatives," and claims that because Dr. Hinterkopf admitted to a breach of the standard of care, it is not a case of the defendant following one of several alternative, acceptable courses of conduct. *Id.*

¶ 19 Appellant's recollection of the testimony offered is inaccurate. As noted by the trial court, the testimony at trial indicated that there was more than one method for a surgeon to explore an abdomen to locate the source of sporadic bleeding. This testimony could support a finding that Dr. Hinterkopf made a "judgment call" in the method he used to explore the abdomen to locate the source of the bleeding, and in his decision to conclude the procedure after observing no blood flow during his 45 minutes of observation and exploration. Thus, a charge on mistake of judgment was warranted under the facts of this case.

¶ 20 Appellant makes claims related to this issue by asserting that the charge as given was "argumentative" and "proselytizing" and improperly "enmeshed with the 'no guarantee of a cure' charge." Appellant's Brief at 36–37. With these matters we agree entirely with the trial court which found that notwithstanding the trial court's broad discretion in choosing the language involved in its closing charge, Appellant's claim must be dismissed, because he "completely failed to raise this issue before the jury began to deliberate." Trial Court Opinion, 11/23/03, at 15. *See Bezerra v. National Railroad Passenger Corp.*, 760 A.2d 56, 64 (Pa.Super.2000).

¶ 21 Appellant's third claim is that the trial court erred when it improperly admitted testimony regarding a peer review proceeding. Appellant complains that the deposition testimony of Dr. Abendroth, a pathologist who performed an autopsy on the decedent, which made reference to her participation in a peer review conference at the Waynesboro Hospital related to Mrs. King's death, was improperly admitted at trial. He claims defense counsel used this testimony to raise an inference that the defendants "had been exonerated by a Medical Peer review for the very care at issue in the lawsuit." Appellant's Brief at 38. In support of his claim Appellant cites to provisions of the Peer Review Protection Act. It provides:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or

introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof.

63 P.S. § 425.4

¶ 22 A review of Dr. Abendroth's testimony shows that she was asked if she accompanied Dr. Koltun and others to Waynesboro Hospital to attend a "morbidity conference." Deposition of Abendroth, 9/19/97, at 30. She answered affirmatively. *Id.* She was then asked why she was asked to attend the meeting and Dr. Abendroth replied that it was "to go over the autopsy findings." *Id.* When asked what she conveyed at the meeting, Appellant's counsel objected, and Dr. Abendroth did not respond. She was then questioned:

Q And would it be fair for me to say that you conveyed essentially what was contained in your report and what you have testified to here today?

A Yes.

*Id.* at 32.

¶ 23 This exchange did not detail the evidence, findings, recommendations, evaluations or opinions undertaken in any peer review proceeding. In certainly did not, as Appellant suggests, infer that the de-

fendants had been exonerated by any medical peer review. Dr. Abendroth's testimony, that she testified consistent with what she did in her present testimony before the jury, simply can not be viewed as prejudicial.[4]

■ ¶ 24 Appellant also challenges the admissibility of testimony offered by Dr. Walter Koltun, Mrs. King's treating physician at the Hershey Medical Center. He claims that this witness was permitted to offer expert testimony, explaining the anatomical structure of the mesentery and the standard performance of a laparoscopy, when he was not identified as an expert witness. Appellant's Brief at 45. Appellant asserts that under Pa.R.C.P. 4003.5(b), Dr. Koltun should not have been permitted to offer expert testimony. He further claims that Dr. Koltun's testimony was impermissible because he relied on hearsay statements in support his opinion.

¶ 25 Appellant's claims fail. Dr. Koltun was identified as both a fact and expert witness in Appellees' pre-trial statements. His deposition was taken and a transcript of it was in Appellant's counsel's possession since 1997. We find no error in the trial court's conclusion that Appellant was not unfairly surprised by the medical expert opinion of Dr. Koltun.

■ ¶ 26 Appellant complains that Dr. Koltun offered "expert" testimony which exceeded the scope of his deposition testimony given as a treating physician. Appellant cites to two passages. In the first, Dr. Koltun recalls that when presented with the patient he was informed by Dr. Stefenelli of the steps which had already

4. Included in Appellant's argument on this issue is a claim that the mistaken admission of this testimony was compounded by defense counsel's insinuations during closing argument. As Appellant has not set forth in his Statement of Questions a challenge to the closing remarks, and as no objection to any

such remarks was made at trial, any such claim is waived. Pa.R.A.P. 2116, *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000) (in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions.)

been made to identify and stop the bleeding. In his testimony Dr. Koltun recalls that he was told by Dr. Stefenelli that they "thought they had addressed it correctly and properly each time." N.T., 5/5/03, at 36, Appellant's Brief at 44 (citing to R.R. 1461, ln. 5). As a reading of this statement makes clear, Dr. Koltun was not offering his own expert opinion on the treatment performed on the patient, he was merely recalling what he had been advised about her treatment up to that point. Also cited by Appellant are sentence fragments which make reference to the instrument used in a laparoscopy, the way one looks through it and the fact that it has a light attached. Appellant's Brief at 44 (citing R.R. 1471, ln. 2–5). This testimony is not expert opinion testimony; it is merely a description of the type of instrument used in the laparoscopy procedure. It is not inadmissible and is not prejudicial.

¶ 27 Appellant cites to further testimony by Dr. Koltun in reference to a claim that "defense counsel may have interacted with the treating physician outside the formal process/rule of court." See Appellant's Brief at 46–47. Appellant claims that such *ex parte* communications are alone sufficient to warrant a new trial. As this claim is not listed in Appellant's statement of questions, but rather is only discussed in reference to the admissibility of Dr. Koltun's testimony, we find it waived. However, we do note that the trial court did separately consider this claim and concluded it was unfounded. Trial Court Opinion, 11/23/03, at 6–7. Within this sub-issue Appellant surmises that Dr. Koltun testified as he did "to sneak his opinions regarding" Mrs. King's care "to help his fellow physicians" "due at least in part, to the work stoppage of Pennsylvania doctors that was ongoing at

the time of trial." *Id.* This "claim" is likewise waived.

¶ 28. Dr. Koltun's testimony is further challenged as being based upon his recollection of hearsay conversations. This challenged testimony, in which Dr. Koltun advises the jury of his discussion with Dr. Stefenelli in relation to the latter's treatment of the patient prior to her presentation before Dr. Koltun, was not improperly admitted. While an expert should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment, *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515, 521 (1992), Dr. Koltun was not offering any opinion testimony. He was merely recounting what had been disclosed to him about Mrs. King's treatment before she arrived seeking his care. This testimony was not offered for the truth of the matter asserted. It was offered as statements made for the purpose of Mrs. King's later diagnosis or treatment by Dr. Koltun. Accordingly, it was admissible under Pa.R.E. 803(4).

¶ 29 Appellant next asserts an additional claim concerning the admission of testimony offered by an expert. He claims that Dr. Hoffman was permitted to testify outside the scope of his report when he answered "yes" to the question: "Once the vessel had been repaired, Doctor, once Dr. Hinterkopf had gone in for that second laparatomy and stopped the bleed and repaired the vessel, would you have expected at that point in time that Mrs. King, under ordinary circumstances, would have gone on to recover?" N.T., 5/5/03, at 127. Appellant complains that this "hypothetical" question was asked without reference to facts of record including matters such as Mrs. King's vital statistics, the amount of time which had elapsed during her bleeding, and its effect on other organs. Appellant's Brief at 54.

¶ 30 When presented with Appellant's objection the trial court permitted the question to proceed, but advised Appellant that it would permit him "latitude on cross" in which he could fully explore those related matters. We perceive no abuse of discretion in this ruling. *See Eichman v. McKeon*, 824 A.2d 305, 319 (Pa.Super.2003) (finding the standard of review in assessing an evidentiary ruling of a trial court is extremely narrow and may only be reversed upon a showing of a manifest abuse of discretion).

 ¶ 31 Appellant's final issues address the trial court's "handling of jury deliberations." Appellant's Brief at 55. He alleges the trial judge improperly invaded the province of the jury when he demonstrated to the jury the "safety" shield mechanism of a trocar device before permitting the device to go out with the jury. He also claims that error occurred when the court refused to allow the jury to view **all** the medical records introduced into evidence. Infused within these claims are allegations that the trial court improperly provided commentary to the jury and enjoyed a special "rapport" with them which was prejudicial to Appellant, and that it improperly responded when the jury advised the court that it was deadlocked.

¶ 32 We have reviewed the transcript as it reflects on the court's interaction with the jury. We concur with the trial court's conclusion that "at no time did [the trial court] comment on the validity of the evidence as submitted by the Plaintiff. Rather [it] simply demonstrated to the jury that by cocking the Trocar the sheath comes down and the instrument is dangerous and could injure a juror if not properly handled." Trial Court Opinion at 16.

¶ 33 The trial court also stated that it limited the amount of medical records that were given to the jury during deliberations because some of the records contained medical terms and notes that could have been misinterpreted as they contained potentially confusing language. Again, we find no abuse of discretion in this ruling. *See Kearns v. Clark*, 343 Pa.Super. 30, 493 A.2d 1358, 1362 (1985) (finding it was within the trial judge's discretion to curtail the jury's unfettered examination of complete medical records).

¶ 34 We further note that our review of the record finds no evidence of the court's alleged "prejudicial conduct." Appellant points out that the jury was provided with coffee, snacks and food during deliberations and that the court made a comment wherein it referred to the matter as a "difficult" case when the jury returned from deliberating for hours. These claims made in the argument portion of Appellant's brief, were not in the statement of questions, and no objections related to these actions were made at trial. Therefore, while we fail to see any merit, these matters are waived. Pa.R.A.P. 2116(a); *Mazlo v. Kaufman*, 793 A.2d 968 (Pa.Super.2002).

¶ 35 Judgment affirmed.