J-A09009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.B., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.B. | : | No. 2863 EDA 2018 |

Appeal from the Order Entered, September 4, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): No. 0C1200490.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 31, 2019**

In this protracted matter, K.B. (Mother) appeals *pro se* the court's decision to award J.B. (Father) primary physical custody of the parties' 8-year-old son (Child).  The custody order followed a non-consecutive, two-day hearing, which occurred in December 2017 and August 2018.  The hearing resolved Mother's petition to modify the parties' shared custody arrangement among other stopgap orders; Mother had filed her triggering modification petition in August 2015.  After review, we affirm.

The procedural history is complex and particularly acrimonious.  The pertinent facts are these:

Child was born in June 2010.  The parties separated in June 2012, but the custody arrangement remained shared.  In August 2015, Mother filed a modification petition seeking primary physical custody.  Litigation, which was

_____
*   Retired Senior Judge assigned to the Superior Court.

already prolonged, mutated into something else when in September 2016 Mother alleged that Father sexually abused Child. The Philadelphia Department of Human Services (DHS) launched an investigation into the alleged abuse. The allegations were eventually determined to be unfounded, but not before they had caused the temporary suspension of Father's custodial rights and extensive delay in the parties' court case.

After a slew of temporary orders, petitions for special relief and contempt, continuances, changes in legal counsel, and changes in the judge of record, the first day of the instant custody hearing finally occurred in December 2017. The second day did not occur until August 2018.

Following the hearing, the court awarded Father slightly more physical custodial time than Mother in a *quasi* 2-2-5-5 custody scheme: over the course of a four-week period, each parent was entitled to 14 custodial days; but Father received 17 overnights compared to Mother's 12.[1] The court ordered the parties to share legal custody.

Mother presents this timely appeal.

She lists six issues in her brief. But before we begin our review, we observe Mother's noncompliance with the Rules of Appellate Procedure and determine which issues Mother properly preserved and which she waived.

---

[1] Each week, Mother has custody every Monday to Wednesday; Father has custody every Wednesday to Saturday morning. The parties alternate weekends, which begin Saturday morning and end when the Child goes to school Monday morning. When Child is not in school, the receiving parent's weekday custodial time begins at 3:00 p.m.

*See Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008). If an appellant's brief does not substantially conform to the Rules, we have discretion to quash or dismiss the appeal. *See* Pa.R.A.P. 2101.

Mother did not include a certificate of compliance ensuring that the brief, which totaled 40 pages, was less than 14,000 words. *See* Pa.R.A.P. 2135(a). Mother circumvents Rule 2116(a), which mandates that "no question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a); *see also King v. Stefenelli*, 862 A.2d 666, 675 (Pa. Super. 2004). In contravention of Rule 2119, Mother also fails to provide arguments corresponding to the questions she has raised.

Mother's appellate issues may be categorized three ways: those she listed in her concise statement (of which there are ten); those that she listed in the questions involved section of her brief (of which there are six); and those issues she actually discussed in the argument section of her brief (of which there are approximately eight). The issues also change order from one category to the next.

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Jones v. Jones*, 878 A.2d 86, 89 (Pa. Super. 2005)(citation omitted). We recognize that Mother, who had been represented by three prior attorneys, has decided to represent herself in this appeal. While we liberally construe the Rules of Appellate Procedure, self-represented litigants are obligated to conform to the same Rules as counseled litigants, and face the same result for non-compliance. *See* Pa.R.A.P. 105;

*see also Wilkins v. Marsico*, 903 A.2d 1281, 1285 (Pa. Super. 2006). Any layperson choosing to represent herself in a legal proceeding must, to some reasonable extent, assume the risk that her lack of expertise and legal training will prove her undoing. ***Rich v. Acrivos,*** 815 A.2d 1106, 1108 (Pa. Super. 2003) (citations omitted).

We begin with Mother's waived issues, which we reorder and restate for ease of disposition.

> I. Whether the trial court incorrectly applied the rules of evidence, barring admission of certain crucial evidence?
>
> II. Whether the trial court erroneously excluded Mother's evidence regarding Father's false abuse claims made against Mother to the Philadelphia County Department of Human Services?

*See* Mother's Brief at 3-4.

Here, the second issue clarifies the first. That is, the crucial evidence that the court allegedly barred from admission was Father's unfounded child abuse claim he made against Mother to DHS.

In reality, the court admitted this evidence by agreement of the parties, who also argued that the evidence was not a factor in determining custody:

> There was a stipulation by and between counsel that this factor [23 Pa.C.S.A. § 5328(a) (2), (2.1) (relating to abuse)] is "neutral" and consideration of child abuse and involvement with protective services is not an issue in this case.
>
> Contrary to the above stipulations of [the parties,] Mother now avers that the trial court erroneously excluded Mother's evidence regarding Father's DHS abuse claim against

> Mother. During Father's testimony, Father admitted that he made a report to DHS alleging that Mother was abusing and/or neglecting Child. Said report of neglect or abuse was determined to be "unfounded," as confirmed by Mother's exhibit M-3, Letter from DHS.

*See* T.C.O. at 6 (citations to the record omitted).

What Mother means to appeal is the weight, not the admissibility, of Father's unfounded allegation. Even if we were to indulge such a challenge, we would conclude that the trial court properly admitted Mother's exhibit and that the limited weight the court afforded Father's actions was not an abuse of discretion. After all, Mother stipulated to the same. Mother's first two issues are without merit.

Next, we turn to Mother's catchall issue, which is partially waived:

> III.    Whether the trial court's analysis of the 23 Pa.C.S.A. § 5328 custody factors are supported by the record?

*See* Mother's Brief at 3.

Again, Mother's noncompliance with the Rules impedes our review. In this portion of her brief, Mother marches through each custody factor, rearguing each factor. ***See*** Mother's Brief at 25-35. Nowhere does she indicate where or how the trial court erred; she merely invites this Court to retry her case.

But that is not the function of the Superior Court. This Court is an error-correcting court. ***See, e.g., Matter of M.P.***, 304 A.3d 976, 986 (Pa. Super. 2019). We cannot simply reweigh the evidence and rehear the arguments made to the trial court. Moreover, this Court will not act as counsel and will

not develop arguments on behalf of an appellant. *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *Jones*, 878 A.2d at 89. (Citation omitted). The argument portion of the brief must contain sufficient citation to the record and legal authority, together with analysis, to guide this Court in its review of the issue. *See Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 153 n.9 (Pa. 2009).

Still, we can discern the crux of Mother's argument. Mother reasons that the trial court's recalibration of the parties' custody arrangement is erroneous, because the court did not consider Father's alleged abuse of both Child and Mother. *See* Mother's Brief at 26-27. Indeed, this would be a significant error, if true.

Before we could consider the merits of that issue, we must conclude that Mother has run afoul of another Rule of Appellate Procedure. "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." *See* Pa.R.A.P. 302(a).

Contrary to her position during various points of the litigation, Mother **stipulated** at the custody hearing that Father **did not** sexually abuse Child and that he **did not** abuse Mother. On appeal, Mother does not realize that her stipulation prevents our review of this issue.

In terms of child abuse, the court explained:

The record is replete with evidence that Mother proactively inhibited Father's custody prior to and throughout the duration of the proceedings. For one, Mother represented allegations that Father sexually abused Child. Said allegations warranted an investigation by DHS which resulted in Father missing significant time with Child from July through November of 2017 and further interfered with Father's parental involvement. Despite the court's receipt and review of the DHS records as permitted and required by 23 PA.C.S.A. § 5329.1, which were necessary to assist in the disposition of the instant matter, the nature of Mother's allegations was ultimately unsubstantiated and abandoned mid-trial. ***During the proceedings, Mother, by and through*** [***her attorney***] ***abandoned the allegations of sexual abuse against Father and further stipulated that said allegations shall not be considered a factor.***

Father credibly testified that said allegations negatively impacted his relationship with Child as Mother prohibited Child from spending time with Father. Father further testified that during the investigation of the allegations and as it relates to parental involvement, it was in Child's best interest for Father not to attend therapy sessions [Footnote 4] and/or attend parent-teacher conferences, as Mother would create issues when Father participated in the above.

> Footnote 4: It was stipulated by and between counsel that the Child has been diagnosed with Asperger's Syndrome.

Father believes Mother's plan was strategically in place to exclude Father from Child's life. Mother's actions corroborate Father's belief that Mother strategically intended to exclude Father from the Child's life.

Further, as stipulated by and between counsel and the parties, Mother, without hesitation, admits that on two separate occasions, she mailed [Father's criminal docket] to Father's employer[.] Mother utilized the trial court's name and address as the return address on the mailings[.] Additionally, as stipulated by and between counsel and the parties, Mother, without hesitation, also admits that on two separate occasions she mailed a letter signed by [a DHS social worker] to Father's employer, indicating that there

was a report of suspected child abuse against Father. [Footnote 5]

> Footnote 5: A hearing was held on March 7, 2017 before the Honorable Francis Joseph Brady of the Commonwealth of Pennsylvania Bureau of Hearings and Appeals regarding the alleged sexual abuse and/or misconduct and dismissed the allegation in its entirety. Any and all findings against Father were subsequently expunged at an appropriate hearing and removed from any and all child care databases.

*See* T.C.O. at 12-13 (citations to the record omitted) (emphasis added).

In terms of domestic violence, the trial court stated:

> Mother avers that the trial court overlooked domestic violence abuse in the instant matter. Contrary to Mother's averment, counsel for Mother unequivocally indicated during oral argument, "Your Honor, there is – at this point, no evidence of past or present abuse – that I think that is important for Your Honor to consider at this point." During closing argument, while addressing the custody factors, Mother's trial counsel clearly stated that there are no allegations of abuse. Accordingly, Mother's appellate contention is blatantly incorrect.

> As it relates to Child, there was no evidence that Child was abused. This was ultimately stipulated to by Mother's [second attorney,] and reaffirmed/re-stipulated to by Mother's [third attorney.] Testimony was repeatedly presented throughout the initial proceedings alleging sexual abuse and/or misconduct by Father against Child. However, no credible evidence was presented substantiating such allegation or alleged misconduct. Mother testified that the alleged sexual abuse and/or misconduct involved Child telling Mother that Father was rubbing his penis and showing Child how to rub his. Mother made a report with the police department and Child was interviewed by the appropriate authority. Mother testified that Child told a police officer that Father was rubbing his penis while touching Child's face.

> Mother testified that Father was "indicated" for the alleged sexual abuse and/or misconduct by DHS which required

> Father to register as an offender. Father vehemently denied said allegations and testified that he was not interviewed by DHS or any authority before being "indicated" and immediately filed an appeal to DHS. Moreover, mid-trial, Mother, by and through [her second attorney] stipulated that the sexual abuse and/or alleged misconduct of Father against the Child was *res judicata* and no longer considered to be an issue. Mother's [third attorney] further stipulated that this was not a factor.

*Id.* at 14-16 (citations to the record and footnote omitted)

As the trial court made abundantly clear, Mother conceded that the abuse allegations were nonfactors and that the issue was settled. Mother fails to recognize that these issues remain settled on appeal.

We now turn to the issues Mother raised in this appeal which are properly before us. We begin with the rest of Mother's third issue, the court's application of the Section 5328(a) custody factors.

Our scope and standard of review of child custody orders are well-established:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 9 -

***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

Insofar as the rest of the custody analysis goes, Mother's challenges all speak to the weight of the court's determination of the custody factors. Nowhere can she articulate how those determinations were unsupported by the evidence.

For instance, Mother argues that Section 5328(a)(5)("the availability of extended family") should have been deemed neutral instead weighing in Father's favor. She claims that the court's conclusion is inconsistent with the fact that she has close friends, which she considers to be extended family. In reality, the court did consider Mother's close friends, per the parties' stipulation. But the stipulation did not preclude the court from favoring Father's family over Mother's close friends.

Next, she claims that the court misapplied Section 5328(a)(7) ("the well-reasoned preference of the child"). The trial court considered this factor to be neutral. During an *in camera* interview, Child told the court that he wanted to spend time with both parents equally. Mother claims that the court's decision to award more overnights to Father, even though the daylight hours are approximately the same, is an abuse of discretion. Again, Mother does not cite any facts to explain how the court's determination was

unsupported by the record. The trial court's determination was not an abuse of discretion.[2]

Finally, Mother challenges the court's conclusions made under Section 5328(a)(16)("Any other relevant factor"). Here, the court addressed Mother's deplorable conduct and her lack of credibility. While the court demonstrated commendable restraint in concluding that Mother's actions were **not** designed to turn Child against Father (under Section 5328(a)(8)) the court was compelled to consider her actions all the same. The court explained:

> Throughout the duration of the proceedings, evidence was presented to illustrate the bad decisions that Mother made which hindered Father's ability to parent, and in turn, deprived Child fully of both parents. Factor 16 weighs in Father's favor when considering the credibility of the parties, Mother's disregard of a direct order of Court, the inexplicable allegations of alleged sexual abuse and/or misconduct, and mailings to Father's employer.
>
> The court made credibility determinations against Mother. The undersigned questioned Mother's credibility during the course of the proceedings and made a finding of such. The court specifically struggled with Mother's credibility as it pertains to two separate incidents when Father missed periods of custodial time due to Mother's unavailability. On one incident, Mother refused to allowed Child to celebrate the 2018 Eagles Super Bowl Championship Parade with Father, during Father's custodial time. The second incident involved Mother's claiming to have a flat tire, which negatively impacted Father's custodial time. The court believes Mother's testimony, at times, lacked credibility and

---

[2] We note the trial court's deft navigation of the *in camera* interview of a special needs child in this high conflict case. The court had the utmost respect for Child's perceptions, and had a keen ability to see Child beyond his diagnosis. The court ensured that Child's voice was heard in the litigation. **See** T.C.O. at 18-20.

consistency. The trial court, with regard to this matter, had a first-hand opportunity to observe Mother's demeanor. When explaining its conclusions as to the section 5328(a) factors, the trial court necessarily resolved conflicts in testimony and made credibility determinations as it is incumbent upon the undersigned to make independent factual determinations based upon the evidence presented.

In addition, the court finds that Mother's blatant disregard of a direct order from the undersigned during a December 14, 2016 proceeding is demonstrative of Mother's inability to encourage contact with Father. The undersigned ordered directly from the bench, that Child be taken to spend time with Father's family who was sitting outside of the courtroom, as Child had not seen them in a long time. Mother consciously disregarded said order and took Child elsewhere. Mother has consistently shown throughout this case that she is not willing to cooperate with Father or Father's family who the court finds are kind, good-hearted, and respectful individuals who truly are invested in Child's best interest. Mother's overall behavior and conduct is detrimental to the best interest of her son, although the undersigned does not find that Mother would intentionally do anything deleterious with regard to Child. Sadly, however, Mother's behavior has had a negative impact upon her son, and such conduct, overall, is considered in this factor.

*See* T.C.O. at 23-24 (citations to the record omitted).

In her brief, Mother concedes that she has engaged in "poor and inappropriate behavior," but she contends that Father did too. *See* Mother's Brief at 34. She cites Father's alleged abuse, which, as explained in great detail above, is something she did not pursue during the custody hearing and is not properly before us now.

She further argues that the court does not appreciate the nuances of Child's autism by treating the custody case as if it concerned a "neuro-typical"

child. *Id.* We fail to see the link between Child's special needs and Mother's reprehensible behavior.

Lastly, she alleges that the trial court is biased against her. *Id.* To the contrary, the court did not let Mother's inexcusable conduct cloud its judgment, as it explicitly recognized Mother's devotion and ability to care for Child. *See* T.C.O. at 20-22 (determining Section 5328(a)(3), (8)-(15) to be neutral). The court noted that it had "no doubt whatsoever that Mother would be able to parent and would be an excellent parent" if Father was unable to exercise custody. *See* T.C.O. at 27.

In sum, we conclude that the court did not abuse its discretion when it conducted its custody factor analysis pursuant to Section 5328(a). Mother's third issue is meritless.

Next, we address two other issues which Mother has properly preserved. Given their interconnection, we discuss them contemporaneously:

> IV. Whether the trial court erred and/or abused its discretion in failing to address the fact that [Child] will not be deprived of Mother's care for extended periods during the week and failed to discuss the possible effect on the child that is on the autism spectrum due to the proposed transfer of primary custody to [Father]?
>
> V. Whether the trial court erred and abused its discretion in entering an order that significantly increased the number of times that the custodial exchange takes place at Mother's home, despite the court's previous ruling in criminal court wherein he mandated that Father attend anger management as a first-time offender in a simple assault trial which involved Mother?

*See* Mother's Brief at 3-4.

The custody order requires the parties to exchange custody as many as three times in a week. At times, Child will be outside of Mother's care for up to five consecutive days. Mother claims that both the frequency of the exchanges and her prolonged absence from Child's daily life will disrupt Child's dire need for consistency and stability. She cites Father's alleged abuse as a basis for limiting the exchanges, and she explains that disruption of Child's schedule is particularly troublesome because he is on the autism spectrum.

Instantly, we reiterate that Mother abandoned her contention that Father was abusive. We focus on the frequency of the custody exchanges and the duration of Mother's noncustodial periods.

On one hand, Mother desires fewer custody exchanges. Instead of a quasi 2-2-5-5 arrangement, the court could have effectuated shared custody by ordering a 7-on-7-off schedule, thereby limiting the custody exchanges to once per week. But on the other hand, Mother also desires shorter noncustodial periods. As it stands, Mother will be the noncustodial parent for five days. The weekly alternative would require her to be without custody even longer. Thus, what Mother really desires is ***primary*** custody, where, Father would have significantly less time, e.g., alternating weekends. As we discussed above, the trial court's custody factor analysis was supported by the record, and the court did not abuse its discretion in awarding Father slightly more physical custody time than Mother.

Perhaps the need for stability and continuity is more important in cases concerning children on the autism spectrum. In this case, however, no such evidence appears in the record. The parties stipulated that Child is on the spectrum, but they evidently disagree about Child's prognosis, capabilities, and what type of care best suits his special needs. Mother asserts that "a child on the Autism Spectrum does not have the cognitive skills to mitigate such a drastic change in his circumstance." *See* Mother's Brief at 23. She cites to no authority on this point.

Parents frequently disagree about what is best for a child's health and development. Separated parents of a child on the spectrum are no different. Here, the court found them equally capable of making proper decisions for Child and ordered them to defer to the pediatrician if they cannot decide how to proceed.

In a high conflict cases, it might be quite prudent of the court to order a 7-on-7-off scheme, where the explicit intention is to limit the number interactions between the parents. In other cases, the special needs of the child might require that the child never goes a full week without seeing the noncustodial parent. If the parents are unable to make a decision for themselves, then the decision belongs exclusively to a trial court judge; it is not for us to speculate. Mother's fourth and fifth issues are also meritless.

Finally, we address Mother's related issue that the new custody arrangement is such a departure from the prior arrangement that it violates her fundamental rights.

VI.      Whether the trial court's decision to award Mother less custodial time than Mother had spent with [Child] over the last three years of Child's life and the existing custodial arrangements is an abuse of discretion and is not supported by the record? "A parent's right to care and companionship of his or her children are so fundamental, as to be guaranteed protection under the First, Ninth and Fourteenth Amendments of the Unites States Constitution

*See* Mother's Brief at 3.

Mother's argument is misplaced.

Of course there are constitutional rights at stake in each custody decision. "In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child." ***S.T. v. R.W***., 192 A.3d 1155, 1160-1161 (Pa. Super. 2018); ***see also Troxel v. Granville***, 530 U.S. 57 (2000); ***see also*** U.S.C.A. Const. Amends. 5, 14; ***and see also generally D.P. v. G.J.P.***, 636 Pa. 574, 146 A.3d 204 (Pa. 2016).  Here, Mother neglects Father's constitutional right to custody and the fact that custody orders are always subject to modification based on a change of circumstances.  As the trial court explained:

> Mother fails to realize the need for Father in Child's life and intentionally tried to keep Father out of Child's life, all, sadly to the detriment of her son.  Mother contends that it was an abuse of discretion to take Child from Mother "primarily" for the next ten years of Child's life.  The trial court did not attempt to implement an order to dictate the next ten years of Child's life.  The trial court did its best in fashioning an order which is in Child's best interest currently and within the immediate future.  The undersigned made a decision upon the record evidence and in accordance with Pennsylvania Child Custody Law.  Among one of the many

> considerations was and is **the need for Father and son to have healing time** – time spent with each other on a quality, loving basis.

**See** T.C.O. at 27 (citations to the record omitted) (emphasis added).

Assuming that Child did have a heightened need for stability and continuity – which, again, is not in the record – such needs would not prevent the court from disrupting the *status quo* in this case. After all, Mother had no issue disrupting the previous *status quo* (i.e. shared custody) when she withheld Child from Father's care. Mother severed Child's stability and continuity when it benefitted her. She cannot explain why her unilateral change to Child's schedule was appropriate but a change that benefits Father is not. In any event, the court's efforts to restore and rehabilitate the Father-Child relationship are entirely appropriate and certainly not an infringement of Mother's constitutional rights. Mother's final issue warrants no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/19

- 17 -